UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL SCHNEIDER,

       Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY,

       Defendant.

_____/

Case No. 14-12127
Honorable Denise Page Hood

**ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [Dkt. No. 41]**

**I.     INTRODUCTION**

This case stems from Defendant's denial of Plaintiff's claim for first party no fault benefits following a motor vehicle accident in September 2013. On or about March 25, 2014, Plaintiff filed a complaint in Genesee County Circuit Court, and Defendant removed the case to this Court on May 29, 2014. On May 20, 2016, Defendant filed a Motion for Summary Judgment. [Dkt. No. 41] The motion has been fully briefed. The Court, having concluded that the decision process would not be significantly aided by oral argument, previously ordered that the motion be resolved on the motion and briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2). [Dkt. No. 51] For the reasons that follow, the Court denies Defendant's Motion for Summary

Judgment.

## II. BACKGROUND

Plaintiff is a 58-year old man who has owned more than 250 cars in his lifetime, due in part to a compulsive buying disorder from which Plaintiff suffers. In February 2013, Plaintiff applied for an automobile insurance policy (the "policy") from Defendant for the following vehicles: a 1999 Jeep Wrangler, a 2004 Mercury Sable (the vehicle he was driving at the time of the accident), and a 2005 Ford Focus, each of which he identified as being insured for personal use. Dkt. No. 41, Ex. 2. The application contained the following provision:

> Any person who knowingly and with the intent to injure, defraud or deceive, submits information to an insurer that is false, incomplete or misleading, may be guilty of a crime.

Dkt. No. 41, Ex. 3. On February 7, 2013, Defendant issued Plaintiff a policy of insurance covering those vehicles. Prior to September 2013, an additional five vehicles were insured on the same policy at some point, at least for a period of time, and 11 policy changes were made during that seven month time frame.

As of September 2013, Plaintiff owned approximately 30 vehicles. On September 27, 2013, he was involved in an automobile accident that caused the injuries that precipitated this cause of action. After Plaintiff made his claim for benefits, Defendant's Special Investigation Unit initiated an investigation due to the

"extraordinary amount of activity since the policy was issued," and Defendant notified Plaintiff of that investigation. Defendant indicates that, after the investigation was conducted, the matter was referred to Nicholas Marrangoni, the lead compliance analyst for Defendant, then to Defendant's in-house counsel and director of state operations for Michigan. Defendant rescinded the policy, and a notice of rescission, together with a representation that premiums that Plaintiff had paid would be returned, was mailed to Plaintiff on January 9, 2014.

## III. APPLICABLE LAW & ANALYSIS

### A. Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

**B.     Analysis**

Defendant claims that it was entitled to rescind the policy because there is no genuine dispute that Plaintiff misrepresented to Defendant that he used the insured vehicles for personal use. Defendant argues that Plaintiff's deposition testimony establishes that there is no genuine dispute that he was a dealer engaged in the business of buying and selling used vehicles. Plaintiff contends that he was not a dealer and simply bought the vehicles as a hobby. Defendant relies on statements made by Plaintiff that:

1.     He has owned over 250 vehicles;

4

2. He owned and had 30 vehicles in storage at the time of his deposition;

3. He owned 10 to 15 vehicles when he applied for the policy;

4. He had added or removed, or both, eight vehicles during the seven-month policy period between February-September 2013, resulting in 11 policy changes;

5. His present policy insures five vehicles;

6. He purchases all kinds of vehicles, including salvage vehicles, from auto dealers, junkyards and auctions;

7. He advertises vehicles for sale on the internet, sells them to dealers and individuals, and sometimes makes money selling them;

8. He has sold at least 15 vehicles, including four vehicles in 2014 and at least two vehicles in 2015;

9. He bought the 2004 Mercury Sable as a total loss for $900, drove it for a year, had two accidents in it, and then sold it for $800;

10. He purchased vehicles that had to be towed;

11. He purchased vehicles that he never drove for pleasure before selling them;

12. He formed a limited liability company called Backyard Parts LLC, "a putative junkyard auto parts operation;"

13. He has paid up to $350.00 per month in storage fees for his vehicles; and

14. He testified that he wanted to make money, but none of the vehicles had collectable value (they were domestic models that were 10 to 15 years old).

Defendant contends that the "inescapable conclusion" from all of these things:

> is that Plaintiff was operating a business with his vehicles. He bought and sold these vehicles, trading with individuals, auctions, dealers, and junkyards. He bought totaled vehicles to restore, drive and re-sell. He profited by the sale of two of the cars listed on the policy. This proves the vehicles listed on the policy were part of Plaintiff's business.

Dkt. No. 41, PgID 273.

Defendant argues that because Plaintiff was the titleholder on all of these vehicles, he misled Defendant about the business use of the vehicles. Defendant asserts that, had it known about all of the vehicles Plaintiff owned, bought, and sold, Defendant never would have underwritten the risk, such that it was justified rescinding the policy as a matter of law. *See, e.g., Hammond v. Metropolitan Prop. & Cas. Ins. Co.*, 222 Mich.App. 485, 488 (1997) ("where a policy of insurance is procured through the insured's intentional misrepresentation of a material fact in the application for insurance, . . . an insurer may rescind an insurance policy and declare it void ab initio."). Defendant contends that rescission is appropriate even in if the misrepresentation was unintentional. Citing *Lash v. Allstate Ins. Co.*, 210 Mich.App. 98, 103 (1995).

The well-established authority in Michigan provides that any misrepresentation that "substantially increase[s] the risk of loss insured against so as to bring about a rejection of the risk or the charging of an increased premium" is considered material. *Darnell v. Auto-Owners Ins. Co.*, 142 Mich.App. 1, 9 (1985). *See also Keys v. Pace*,

358 Mich. 74 (1959) (a misrepresentation is material when the insurer would have charged a higher premium or not accepted the risk had the insurer known the true facts); *General Am. Life Ins. Co. v. Wojciechowski*, 314 Mich. 275, 281 (1946) (citation omitted) ("A false representation in an application for insurance which materially affects the acceptance of the risk entitles the insurer to cancellation as a matter of law").

The Court is not persuaded that Defendant should prevail at this state of the proceedings, as material facts remain in dispute. First, contrary to Defendant's argument, Plaintiff testified at his deposition that he informed his agent when obtaining the policy that he owned more vehicles than he was insuring on the policy. On that basis, Defendant cannot establish the absence of a genuine dispute with respect to whether Defendant knew at the time of issuing the policy that Plaintiff had more vehicles than the three he insured. That is true even if Defendant had a witness who would testify that Plaintiff did not tell the agent he had more vehicles (which Defendant has not proffered at this time).

Second, based on Michigan statutes, it is not clear that Plaintiff is a dealer. M.C.L. 257.11(1) defines a "dealer" as:

 (a) A person who in a 12-month period did 1 or more of the following:

  i. Engaged in the business of purchasing, selling, exchanging,

>> brokering, leasing, or dealing in vehicles of a type required to be titled under this act.
>>
>> ii. Engaged in the business of purchasing, selling, exchanging, brokering, or dealing in salvageable parts of 5 or more vehicles.
>>
>> iii. Engaged in the business of buying 5 or more vehicles to sell vehicle parts or process into scrap metal.
>
> (b) A person engaged in the actual remanufacturing of engines or transmissions.

And, MCL 257.11(2) establishes a "rebuttable presumption that a person who, in a 12-month period, buys and sells, exchanges, brokers, leases, or deals in 5 or more vehicles, salvageable parts for 5 or more vehicles to sell vehicle parts to process into scrap metal is engaged in a business of being a dealer as described in" M.C.L. 257.11(1). The Court finds that M.C.L. 257.11 provides a clear and unambiguous definition of a "dealer." The Court further finds that the statute unambiguously means that a person who purchases, sells, exchanges, brokers or deals in no more than 4 vehicles during a 12-month period is not a dealer for purposes of the statute.

The Court finds that the evidence submitted by Defendant does not indisputably establish that Plaintiff fits within the definition of a "dealer." Defendant has not proffered evidence that Plaintiff sold 5 or more vehicles within a single 12-month period; rather, Defendant contends only that Plaintiff sold 2-4 vehicles during a single 12-month period. Similarly, Plaintiff testified that he sold three or four vehicles (one

of which was a camper) during the relevant policy period, and he never testified that he sold more than four vehicles in any year. Dkt. No. 49, Ex. 5 at PgID 510-11.[1]

Third, Plaintiff has offered testimony that he drove the vehicles he purchased, testimony that could reasonably support a conclusion other than that he was a dealer engaged in the business of buying and selling vehicles. Plaintiff has submitted evidence that he has a compulsive buying disorder, Dkt. No. 49, Ex 1 at PgID 421, Ex. 5 at PgID 473, and the Supplement to Defendant's Motion for Summary Judgment ("Supplement") supports that contention. Dkt. No. 55, Ex. 1 at PgID 686 ("Other impulsive behaviors include purchasing 'too many cars, so now I own 40 cars.'"). Plaintiff also has provided evidence that Back Yard Parts LLC was dissolved in 2007 (at least at the local level), Dkt. No. 49, Ex. 6, and that he has not engaged in a business since then. Plaintiff's deposition testimony can also be reasonably interpreted to demonstrate that he was not a dealer in automobiles, *see, e.g.*, Dkt. No. 49, Ex. 5 at 53-101, though the Supplement contains evidence that may support a finding that he was an automobile dealer. *See* Dkt. No. 55, Ex. 1 at PgID 686 ("Now working for himself selling used cars.").

---

[1] The Court notes that M.C.L. 257.11(1) does not address the number of vehicles owned, purchased, or sold during the course of person's lifetime, only for a 12-month period, so the total number of vehicles owned by Plaintiff is not relevant with respect to determining whether he is or was a "dealer" under the statute.

Fourth, the Court finds that Defendant has not explained where on the application for the policy Plaintiff was required to disclose that he: (1) owned 30 vehicles at the time; (2) bought or sold – or did not buy or sell – a certain number of vehicles; or (3) owned over 250 vehicles in his lifetime.

Fifth, there is no evidence that Defendant conducted an investigation due to the "extraordinary amount of activity since the policy was issued" at any time prior to the accident, even though Plaintiff had been making changes to his policy regularly during the policy period.  During that period (which included when all the changes were being made), Defendant collected Plaintiff's premiums, without complaint or question.  The fact that Defendant continued to collect Plaintiff's premiums even as Defendant was aware that Plaintiff made multiple changes to his policy, including adding five additional vehicles, constitutes evidence that – and creates a genuine dispute of material fact whether – Defendant would insure Plaintiff if he had multiple vehicles and made regular changes to the policy.

Sixth, even Defendant's arguments demonstrate why the Court concludes that there is a genuine dispute of material fact:

> The wealth of vehicles purchased from both commercial and personal sources <u>weighs against such a finding</u> [of a hobby].  The character of the vehicles—older, mostly domestic, inexpensive—<u>is strongly suggestive</u> of a commercial enterprise dedicated to rehabilitating the vehicles for resale.  Likewise the absence of older, expensive, rare, collectible vehicles <u>is indicative of</u> a for profit rehabilitation endeavor, not a hobby.

> . . . <u>Weighing the evidence</u>, Plaintiff cannot simply deny his way to a question of fact and avoid summary judgment. The <u>overwhelming evidence in this case</u> supports the rescission of the policy and the entry of summary judgment in favor of [Defendant].

The highlighted language reveals that Defendant's arguments go to the weight of the evidence; they do not establish, as a matter of law, that the statements on which Defendant relies (or the arguments that it makes) are indisputable facts.

Finally, the Court is not persuaded by Defendant's argument that Plaintiff's self-serving assertions are not enough to avoid summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (no genuine issue of material fact where the plaintiff's deposition testimony alone was "blatantly contradicted by the record so that no reasonable jury could believe it"); *Bergen v. Baker*, 264 Mich.App. 376, 387 (2004). As discussed above, this is not a case where Plaintiff's deposition testimony is "blatantly contradicted by the record."

For all of the reasons set forth above, the Court cannot reach that "the inescapable conclusion" that: (a) Plaintiff was a "dealer," or (b) Plaintiff made a material misrepresentation when he claimed the insured vehicles were for his personal use and did not tell Defendant he owned additional vehicles (or had them in storage). The Court denies Defendant's Motion for Summary Judgment.

## IV.  CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [**Dkt. No. 41**] is **DENIED**.

IT IS SO ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: October 18, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 18, 2016, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager